IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **KYLE ELMO ORTEZ,** § | | |
| **(TDCJ No. 02264645),** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | | Civil Action No. 4:19-cv-106-O |
| § | | |
| **WISE COUNTY** § | | |
| **SHERIFF'S DEPARTMENT, et al.,** § | | |
| § | | |
| **Defendants.** § | | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court for review of pro-se plaintiff Kyle Elmo Ortez's ("Ortez" or "Plaintiff") claims against remaining defendant Kaci Sartor ("Sartor"). Now pending is the motion for summary judgment of Sartor, along with a brief in support and an appendix. Mot. Summ. J., ECF No. 29; Brief, ECF No. 30; App., ECF No. 31. Plaintiff Ortez filed neither a response nor a request for an extension to file any response. After review and consideration of the summary judgment motion, pleadings, evidence, record, and applicable law, the Court concludes that Sartor is entitled to summary judgment on all claims asserted against her by Ortez.

### I.   BACKGROUND and PLAINTIFF'S PLEADINGS

Plaintiff is now an inmate at the Texas Department of Criminal Justice's Cole State Jail facility. He was formerly incarcerated in the Wise County Jail. He complains that, while he was detained at Wise County Jail, Sartor and other individual defendants denied him adequate medical care related to an injured finger. Am. Compl. 4, ECF No. 5; More Definite Statement (MDS) 1-3, ECF NO. 15. Through records provided by Sartor, it is apparent that Ortez was detained at the Wise County Jail from December 4-7, 2017. Over that four-day period, he was treated by two (2)

medical professionals, provided antibiotics and other medications, and he was taken to and treated by the Wise County Regional Emergency Room. Ortez bonded out of the jail on the evening he returned from the emergency room. After his release from Wise County's custody, the condition of Ortez's finger apparently worsened, and the tip of his finger was amputated in January 2018. Ortez seeks monetary damages. Am. Compl. 4, ECF No. 5.

## II. SUMMARY JUDGMENT EVIDENCE

As noted, Sartor filed an appendix in support of the motion for summary judgment that includes a total of fifty pages of records. ECF No. 31. In particular, the appendix includes the June 18, 2020 Affidavit of Kaci Sartor with forty-three pages of copies of records of the Wise County Sheriff's Office. App. 5-6, 8-50, ECF No. 31. Ortez declared that his complaint and more definite statement in this matter to each be "true and correct" and made "under penalty of perjury." Am. Compl. 5, ECF No. 5; MDS 4, ECF No. 15. Under controlling circuit authority, this Court must consider these pleadings as competent summary-judgment evidence in resolving Sartor's summary judgment motion. *See Barnes v. Johnson*, 204 F. App'x 377, 378 (5th Cir. 2006) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (a plaintiff's verified complaint may serve as competent summary judgment evidence)); *see also Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (citing *Huckabay v. Moore*, 142 F.3d 233, 240 n.6 (5th Cir. 1998)); *see generally Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1989) (noting that the statutory exception in 28 U.S.C. § 1746 permits unsworn declarations to substitute for an affidavit if made "under penalty of perjury" and verified as "true and correct").

### A. Plaintiff's Complaint and MDS

In the statement of claim section of his Amended Complaint, Ortez alleges the following:

Wise County Jail Medical Staff neglected to treat an infection of my third digit on my right hand (middle finger). This was an incident in Dec. of 2017 inside the Wise

> County Jail involving Mrs. Flemming, Ms. Sartor, Mr. Edwards and Mr. Frabella. The first 2 names are the medical staff the second 2 names are jail correctional officers. They refused to take me to the hospital for 6 days[.] [T]he whole time I was in excruciating pain and the swelling never stopped. My finger was amputated Feb. 7, 2018.

Am. Compl. 4, ECF No. 5.

Ortez provided further factual allegations in his more definite statement. With regard to the time period Ortez was at the Wise County Jail, he writes that he had an open wound on his middle finger when he arrived at the jail in early December 2017. MDS 1, ECF No. 15. He acknowledges being prescribed "K-Flex" by Fleming, but claims he was both denied a trip to the hospital, and separately claims he was taken to a hospital on December 7, 2017. *Id.* 1-2. With regard to his claims against defendant Sartor, the only specific allegations are that she "had the ability to get me taken to the hospital but refused me," and that she (along with Edwards and Fleming) "all denied me the right to due medical [sic] my Eighth Amendment Right." *Id.* at 3. Although Ortez includes other factual allegations against Edwards and Fleming, and factual allegations about his treatment at an outside medical facility, none of those allegations relates to Sartor, and are thus irrelevant.

### B. Sartor's Affidavit and Wise County Records Evidence

As noted, in support of the summary judgment motion, Sartor provided her own factual affidavit and attached several records of the Wise County Sheriff's Office. App. 5-50, ECF No. 31. Those records show Ortez was booked into the Wise County Jail on December 3, 2017, after being arrested on a charge for family violence assault and an outstanding warrant from Tarrant County for driving without a license. The assault charge stemmed from allegations that Ortez threw his girlfriend to the ground and repeatedly kicked her in the face and neck with his steel-toed boots. App. 8-14, ECF No. 31.

The records also show when he was booked into the Wise County Jail, Ortez complained to jailers about pain in his right hand. His suicide screening intake form notes, "[Ortez] states [right] hand hurts for 3 days now." App. (Sartor Affidavit 6), 15, ECF No. 31. Ortez also filled out a sick call request complaining of a "broken hand." App. 18, ECF No. 31.

The records show that on December 5, 2017, Ortez was seen by Fleming, a nurse practitioner formerly with the Wise County Jail. Ortez complained of a "broken hand or middle finger" and reported that he had an open cut on his third finger, which he had tried to close with silicone adhesive—i.e., superglue. *Id.* at 19. Fleming examined Ortez's hand and finger and ordered an x-ray, which showed some soft tissue swelling and a potential fracture of the middle finger. *Id.* at 19, 22-23. (nursing clinic note and radiology report). Fleming prescribed Ortez Keflex (antibiotic) and ibuprofen, as needed. *Id.* at 19-20.

The records further show that on the morning of December 7, 2017, Sartor, a licensed vocational nurse, made her routine "med pass" through the jail and saw Ortez for complaints of increased pain in his swollen finger. App. (Sartor Affidavit 6), 24, ECF No. 31. Sartor notified Fleming, soaked Plaintiff's hand in betadine and water, and they sent him to the emergency room at Wise County Regional Medical Center for an "I & D" (incision & drain) evaluation on his finger. *Id*. Hospital doctors diagnosed Ortez with cellulitis (infection of the skin and tissue underneath), prescribed him the antibiotic Augmentin, and sent him back to the Wise County Jail. *Id.* at 25-31. Plaintiff bonded out of the Wise County Jail later that day. App. (Sartor Affidavit 6), 47-48, ECF No. 31.

Medication logs from the Wise County Jail show that during the time he was incarcerated there, Ortez was given: (1) two doses of Keflex on December 6 and two doses on December 7; (2) four doses of ibuprofen on December 5 and four on December 6; and (3) eight doses of ibuprofen

on December 7, 2017. *Id*. at 32-33.

The records also show that Ortez was again arrested in March 2018 and booked into the Wise County Jail. *Id.* at 49-50. According to medical records obtained by the Jail, the condition of Ortez's finger apparently worsened after he bonded out in December 2017, and the tip of his finger was amputated on January 29, 2018, by an unrelated health care facility. *Id.* at 35-46.

### III.   APPLICABLE LAW

#### A.   Summary Judgment Standard

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992).  Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that

evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (other citation omitted)). In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "After the non-movant [here, Ortez] has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### B.  Qualified Immunity

Defendant Sartor seeks judgment on the basis that she is entitled to qualified immunity from Ortez's claims of a constitutional violation. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity inquiry thus involves two prongs that must be answered affirmatively for an official to face liability: (1) whether the defendant's conduct violated a constitutional right, and (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation." *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (citing *Pearson*, 555 U.S. at 232); *see also Tolan v. Cotton,* 572 U.S. 650, 655-56 (2014). The Court may begin its inquiry with either prong. *Tolan,* 572 U.S. at 656 (citing *Pearson*, 555 U.S. at 236).

"When a defendant invokes qualified immunity, the burden shifts to the plaintiff to

demonstrate the inapplicability of the defense." *Crostley v. Lamar Cnty.,* 717 F.3d 410, 422 (5th Cir. 2013) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)). "This standard, even on summary judgment, 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Poole v. City of Shreveport,* 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008)).

### C.  Applicable Standard for Review of Ortez's Claim of Inadequate Medical Care

Title 42 U.S.C. § 1983 provides a remedy for the deprivation of rights secured by the "Constitution and laws of the United States." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981) (quoting 42 U.S.C. § 1983). To recover pursuant to section 1983, a plaintiff must demonstrate (1) a violation of the Constitution or federal law, (2) by a person acting under color of state law. *See Hawkins v. Montague Cnty.*, No. 7:10-cv-19-O, at *5 (N.D. Tex. Nov. 1, 2010) (citing *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005)). The constitutional rights of pretrial detainees like Ortez are found in the procedural and substantive due process guarantees of the Fourteenth Amendment. *Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (other citation omitted)).

A pretrial detainee's claim for inadequate medical care may "be brought under two alternative theories," either "as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Id.* at 462 (citing *Hare*, 74 F.3d at 644-45); *see also Flores v. Cnty. of Hardeman*, *Tex.*, 124 F.3d 736, 738 (5th Cir. 1997) ("[W]e must first classify the challenge as an attack on a 'condition of confinement' or as an 'episodic act or omission.'"). If the harm complained of is a

"particular act or omission of one or more officials, the action is characterized as an 'episodic act or omission' case." *Flores*, 124 F.3d at 738 (quoting *Hare*, 74 F.3d at 645); *see also Estate of Henson*, 795 F.3d at 463 (episodic-acts-or-omission claim "faults specific jail officials for their acts or omissions"). The hallmark of such a claim is that an "actor is 'interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission.'" *Estate of Henson*, 795 F.3d at 463 (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). The "detainee in such a case must establish that the official(s) acted with subjective deliberate indifference to prove a violation of his constitutional rights." *Flores*, 124 F.3d at 738; *Scott*, 114 F.3d at 54. "[O]nly when … [a jail] official had 'subjective knowledge of a substantial risk of serious harm'" to a pretrial detainee and responded to that risk with deliberate indifference does the official violate the detainee's constitutional right to be secure in his basic human needs. *Estate of Henson*, 795 F.3d at 464 (citations omitted). "Knowledge, in this context, requires that an official is both aware of facts from which an inference of harm could be drawn and actually draws that inference." *Perniciaro v. Lea*, 901 F.3d 241, 257 (5th Cir. 2018).

"Deliberate indifference is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citing *Domino v. Texas Dep't of Crim. Justice,* 239 F.3d 752, 756 (5th Cir. 2001) and *Hernandez v. Tex. Dep't of Protective & Regulatory Servs*., 380 F.3d 872, 885 (5th Cir. 2014)). It requires "a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely negligent oversight." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (internal quotations omitted). Indeed, "prison officials who actually knew of a substantial risk to inmate health of safety may be found free from

liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). To prevail on a claim of inadequate medical care, a plaintiff "must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 279 (5th Cir. 2015) (internal quotation marks and citations omitted). In addition, unsuccessful medical treatment, medical malpractice, or disagreement with medical treatment "do not constitute deliberate indifference." *Gobert*, 463 F.3d at 346.

## IV. ANALYSIS

Applying the law to the facts in this case and viewing all evidence in the light most favorable to Ortez, the nonmoving party, the summary judgment evidence demonstrates there was no constitutional violation by Sartor, such that she is entitled to qualified immunity. Ortez has not cited evidence that shows Sartor was deliberately indifferent to an excessive risk of harm, as the law requires in order to establish a violation of the Constitution. There is no evidence raising a genuine dispute of fact that she: (1) was subjectively aware of a substantial or excessive risk of harm to Ortez; (2) acted with deliberate indifference to that substantial or excessive risk; or (3) otherwise caused a violation of Ortez's constitutional rights.

As demonstrated in the records included within Sartor's appendix, the summary judgment evidence conclusively shows that Sartor was not subjectively aware of a substantial or excessive risk of harm to Ortez, or that she was deliberately indifferent to any risk of harm. App. (Sartor Affidavit 6), 8-50, ECF No. 31. To the contrary, Ortez was seen and treated by multiple medical professionals at the Wise County Jail, including Sartor, shortly after he was arrested and detained on December 3, 2017. At intake, Ortez complained of pain in his hand and finger, which was

examined and x-rayed by nurse Fleming, and Ortez was then prescribed antibiotics and ibuprofen. App. (Sartor Affidavit 6), 15, 19-23, ECF No. 31. Jailers provided Ortez with multiple doses of these medications from December 5-7, 2017. *Id.* at 32-33.

During her routine "med call" on December 7, 2017, Sartor also examined Ortez, soaked his hand in betadine and water, and later had him transported for treatment to the Wise County Regional Medical Center. App. (Sartor Affidavit 6), 24, ECF No. 31. Hospital doctors diagnosed him with an infection, prescribed him more antibiotics, and sent him back to the jail, where he bonded out later that same day. App. (Sartor Affidavit 6), 25-31, ECF No. 31.

Based on this record evidence, which Ortez has not disputed, his claims are without merit. Sartor never denied Ortez adequate medical care or otherwise violated his constitutional rights. She was not deliberately indifferent to any risk of harm. In fact, her conduct and the conduct of the other Wise County Jail personnel appears responsive to Ortez's medical needs. Over the four-day period of detention at the Wise County Jail, Ortez was examined, treated, provided medications, and transported to the local emergency room for treatment. Ortez has not come forward with evidence to show that Sartor "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Mason*, 806 F.3d at 279 (citations omitted). Ortez's allegations fall far short of this "extremely high standard." *Id.*

Accordingly, upon this review, the Court finds and concludes that Sartor is entitled to qualified immunity from suit, such that her motion for summary judgment must be granted and Ortez's claims against her dismissed with prejudice.

## V. CONCLUSION and ORDER

For the reasons discussed herein, it is therefore **ORDERED** that Sartor's motion for summary judgment (ECF No. 29) is **GRANTED**, such that Plaintiff Kyle Ortez shall take nothing on his claims against Defendant Sartor, and such claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **20th day** of **November, 2020**.

                                                Reed O'Connor
                                      **UNITED STATES DISTRICT JUDGE**